# United States District Court
## NORTHERN DISTRICT OF TEXAS
### DALLAS DIVISION

| | |
|---|---|
| TAMMY MAQBOOL § | |
| § | |
| v. § | CIVIL ACTION NO. 3:24-CV-0020-S |
| § | |
| NATIONWIDE MUTUAL INSURANCE § | |
| COMPANY § | |

## MEMORANDUM OPINION AND ORDER

Before the Court is Defendant Nationwide Mutual Insurance Company's Motion for Summary Judgment ("Motion") [ECF No. 14]. The Court has reviewed the Motion, the Brief in Support of the Motion ("Defendant's Brief") [ECF No. 15], the summary judgment evidence, and the applicable law. For the following reasons, the Court **GRANTS** the Motion.

### I. BACKGROUND

This case centers around the alleged breach of a settlement agreement that arose from a personal injury suit brought by Plaintiff in the 160th Judicial District Court of Dallas County, Texas ("Initial Suit"). Pl.'s Original Pet. ("Petition") [ECF No. 1-1] ¶¶ 9-10, 16-19; Defendant's Notice of Removal ("Notice of Removal") [ECF No. 1] 1. The defendants in the Initial Suit were Jovel James Bellamy and Goody Goody Liquor, Inc. ("Original Defendants"). Pet. ¶ 9.

On November 21, 2019, Plaintiff's counsel and Original Defendants' counsel in the Initial Suit entered into a Rule 11 Agreement in which Original Defendants agreed to pay Plaintiff $165,000 through their insurer, which they identified in the Rule 11 Agreement as "Nationwide Insurance." Def.'s App.[1] [ECF No. 15-1] 1-2. But after her counsel signed the Rule 11 Agreement, Plaintiff refused to finalize the settlement and sign the necessary documents, here a Compromise

---

[1] The appendix attached to Defendant's Brief does not have a title. The Court refers to it as Defendant's Appendix.

Settlement Agreement and an Addendum to Release of All Claims (No Known Medicare Involvement) ("Final Settlement Documents"). *See id.* at 4, 53; Pet., Ex. C [ECF No. 1-1] 37-42. According to the Plaintiff, because her counsel entered into the Rule 11 Agreement without her authorization, Plaintiff asked her counsel to withdraw from the case. Def.'s App. 3, 62. In one email to her counsel, Plaintiff wrote: "You should not have accepted [the] $165,000 offer when I have clearly rejected it as insufficient." *Id.* at 3. On March 30, 2020, Original Defendants filed with the state court their Motion to Enforce Rule 11 Agreement ("Motion to Enforce"). *Id.* at 4-7.

According to a later state court filing by Plaintiff, her counsel then filed a motion to withdraw, and the state court held "[a] hearing . . . by a phone conference on or about March 27, 2020," on the motion to withdraw. *Id.* at 53. In this hearing, the state court denied Plaintiff's counsel's motion to withdraw. *Id.* at 53-54. Plaintiff also noted in this state court filing that at one point the state court "recogniz[ed] the Rule 11 [settlement agreement] for $165,000.00," *see id.* at 54, but it is unclear from this filing whether this acknowledgment occurred at the hearing on the motion to withdraw or at some other date. The Court, to its knowledge, is not in receipt of a transcript or order from the hearing on the motion to withdraw or any transcript or order regarding the Court's purported recognition of the Rule 11 Agreement. The Court is only in receipt of a recounting of these events in this later state court filing by Plaintiff. *See id.* at 53-54.

Observing that the Initial Suit "reflect[ed] the entry of settlement," the state court set a hearing for April 7, 2020, for entry of final judgment and warned that "[f]ailure to appear at the disposition hearing if a final order has not been submitted will result in dismissal of the case for want of prosecution." *Id.* at 50. Plaintiff did not attend the hearing, and the state court then dismissed the Initial Suit for want of prosecution. *Id.* at 51-52. On May 7, 2020, Plaintiff's counsel filed Plaintiff's Verified Motion to Reinstate, asking the state court to reinstate the Initial Suit to

its docket. *Id.* at 53-57. In this motion, Plaintiff's counsel noted that Plaintiff was still "failing to diligently execute her name by a signature on the [s]ettlement releases." *Id.* at 54. On June 11 and 12, 2020, Plaintiff's counsel withdrew from the Initial Suit. *Id.* at 24-25. Then, on July 8, 2020, Plaintiff filed a pro se Plaintiff's Motion to Dismiss Defendants' Motion to Enforce, arguing that "[a]ny settlement (if any) was not authorized by me, and therefore should be null and void." *Id.* at 19-21. A week later, on July 14, 2020, Plaintiff filed Plaintiff's Verified First Amended Motion to Reinstate, again asking the state court to reinstate the Initial Suit on its docket and stating: "Since I never authorized [my] attorneys . . . to settle my case, I refused to sign their illegally prepared settlement documents." *Id.* at 62-68.

Three years later, on July 7, 2023, Plaintiff herself sent a demand letter to Original Defendants' counsel, asking that Original Defendants pay the previously agreed to $165,000 or else she would "seek[] an order from the court to enforce the settlement agreement." *Id.* at 101-02. Then, on November 5, 2023, Plaintiff, represented by new counsel, sent a second demand letter with the signed Final Settlement Documents, demanding payment of the $165,000. Pet., Ex. D. [ECF No. 1-1] 46-62. Original Defendants responded to the second demand letter and refused to agree to the $165,000 payment, arguing that Plaintiff had repudiated the Rule 11 Agreement. Def.'s App. 12-13.

Accordingly, on November 16, 2023, Plaintiff filed the Petition in the 162nd Judicial District Court of Dallas County, Texas, against Defendant Nationwide Mutual Insurance Company, the alleged insurer of Original Defendants. *See* Pet. Plaintiff brought a breach of contract claim against Defendant for refusing to pay the $165,000 set out in the Rule 11 Agreement. *See id.* ¶¶ 16-19. Defendant subsequently removed the case to this Court, *see* Notice of Removal, and filed this Motion. Plaintiff did not file a response.

## II. LEGAL STANDARD

Courts "shall grant summary judgment if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." FED. R. CIV. P. 56(a); *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 247 (1986). In making this determination, courts must view all evidence and draw all reasonable inferences in the light most favorable to the party opposing the motion. *United States v. Diebold, Inc.*, 369 U.S. 654, 655 (1962). The moving party bears the initial burden of informing the court of the basis for its belief that there is no genuine issue for trial. *Celotex Corp. v. Catrett*, 477 U.S. 317, 323 (1986).

When a party bears the burden of proof on an issue, he "must establish beyond peradventure *all* of the essential elements of the claim or defense to warrant judgment in his favor." *Fontenot v. Upjohn Co.*, 780 F.2d 1190, 1194 (5th Cir. 1986). When the nonmovant bears the burden of proof, the movant may demonstrate entitlement to summary judgment either by (1) submitting evidence that negates the existence of an essential element of the nonmovant's claim or affirmative defense, or (2) showing that there is no evidence to support an essential element of the nonmovant's claim or affirmative defense. *Celotex*, 477 U.S. at 322-25. Once the movant has made this showing, the burden shifts to the nonmovant to establish that there is a genuine issue of material fact so that a reasonable jury might return a verdict in its favor. *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 586-87 (1986). "[C]onclusory statements, speculation, and unsubstantiated assertions" will not suffice to satisfy the nonmovant's burden. *RSR Corp. v. Int'l Ins. Co.*, 612 F.3d 851, 857 (5th Cir. 2010). The Court resolves factual controversies in favor of the nonmoving party "only when an actual controversy exists, that is, when both parties have submitted evidence of contradictory facts." *Olabisiomotosho v. City of Houston*, 185 F.3d 521, 525 (5th Cir. 1999) (citing *McCallum Highlands, Ltd. v. Wash. Cap. Dus, Inc.*, 66 F.3d 89, 92 (5th Cir. 1995)).

## III. ANALYSIS

The Court concludes that Plaintiff's breach of contract claim against Defendant fails as a matter of law because Plaintiff repudiated the Rule 11 Agreement and thus Original Defendants are not liable under that agreement.

Under Texas law, "[t]he general rule is that an injured party cannot sue the [defendant's] insurer directly until the [defendant's] liability has been finally determined by agreement or judgment." *Turner v. Cincinnati Ins. Co.*, 9 F.4th 300, 309 (5th Cir. 2021) (alteration in original) (quoting *In re Essex Ins. Co.*, 450 S.W.3d 524, 525 (Tex. 2014)). Because Plaintiff brings a claim against Defendant, the alleged insurer for Original Defendants,[2] the Court must first determine if Original Defendants are liable under the Rule 11 Agreement.

Defendant asserts that since Plaintiff repudiated the Rule 11 Agreement, Original Defendants are not liable under that agreement. Def.'s Br. 5-8.[3] The Court agrees. Settlement agreements, like the Rule 11 Agreement here, are "enforceable in the same manner as any other written contract." TEX. CIV. PRAC. & REM. CODE § 154.071(a); *see also Ford Motor Co. v. Castillo*, 279 S.W.3d 656, 663 (Tex. 2009) ("Written settlement agreements may be enforced as contracts even if one party withdraws consent before judgment is entered on the agreement.") (citation omitted). And under Texas law, "[w]hen one party repudiates the agreement and refuses to be

---

[2] Defendant contends that it is not the correct insurance company to sue as "Nationwide is the brand name, [but] Allied Property and Casualty Insurance Company ('Allied') is the correct name of the insurer that issued the [p]olicy." Def.'s Br. 1, 8. Because the Court concludes that Original Defendants are not liable under the Rule 11 Agreement and thus Plaintiff's breach of contract claim would fail against Original Defendants' insurer, whichever entity that may be, the Court need not address whether Defendant or Allied is the correct party.

[3] Plaintiff did not respond to the Motion and thus did not submit any countervailing evidence to rebut Defendant's evidence. Yet "summary judgment cannot be supported solely on the ground that [the non-moving party] failed to respond to [a] motion for summary judgment," and "on a motion for summary judgment, the district court must consider the *record as a whole*, not simply those portions of the record relied upon by the moving party." *John v. State of La. (Bd. of Trustees for State Colls. & Univs.)*, 757 F.2d 698, 709, 711 (5th Cir. 1985) (citation omitted). Accordingly, the Court provides a fulsome analysis of the Motion, viewing the record as a whole.

bound by material obligations, the other party may accept that repudiation as final and is not required to further regard the obligations imposed upon him thereby." *Munoz v. Witt*, No. 10-07-00010-CV, 2008 WL 3971683, at *3 (Tex. App.—Waco Aug. 27, 2008, no pet.) (citation omitted); *see also Lehigh, Inc. v. Xerox Bus. Servs.*, No. 05-95-00026-CV, 1996 WL 144164, at *4 (Tex. App.—Dallas Mar. 28, 1996, no writ) (citation omitted). "In order to repudiate a contract, the repudiating party must positively, unequivocally, and unconditionally refuse to perform the contract prior to the time fixed for performance." *Cooper v. Wildman*, 528 S.W.2d 80, 86 (Tex. App.—Corpus Christi 1975, no writ) (citing, among other sources, *Moore v. Jenkins*, 211 S.W. 975, 976 (1919)). However, "[if] the repudiation is not accepted by the other party, the contract is kept alive for the benefit of both parties; the non-repudiating party, like the repudiating party, remains subject to all obligations under the contract." *Santa Fe Petroleum, L.L.C. v. Star Canyon Corp.*, 156 S.W.3d 630, 638 (Tex. App.—Tyler 2004, no pet.) (citation omitted).

Here, after her counsel signed the Rule 11 Agreement, Plaintiff refused to sign the Final Settlement Documents, asked her counsel to withdraw from the case, and explicitly told them that she was rejecting the $165,000 offer as insufficient. Def.'s App. 3-4, 53. The Court finds that this conduct was a positive, unequivocal, and unconditional refusal to perform. *See Cooper*, 528 S.W.2d at 86 (citation omitted). Then, the Original Defendants filed their Motion to Enforce, asking the state court to enforce the Rule 11 Agreement. Def.'s App. 4-7. The Court finds that the Original Defendants' request for the state court to intervene and enforce the Rule 11 Agreement was an acceptance, rather than a rejection, of Plaintiff's repudiation of the Rule 11 Agreement. By asking the state court to intervene, the Original Defendants were acknowledging that Plaintiff had rejected her obligations under the Rule 11 Agreement and that a court would need to intervene to enforce that agreement's terms. *See Thomas v. Thomas*, 902 S.W.2d 621, 625 n.3 (Tex. App.—

Austin 1995, writ denied) (noting that the choice to sue for anticipatory repudiation of a contract constituted an acceptance of the contract's repudiation); *Munoz*, 2008 WL 3971683, at *4 (finding that, after the plaintiff repudiated a settlement contract, the defendant's insurer's refusal to pay more than the agreed-to amount was evidence of acceptance of the repudiation, and that the insurer's willingness to pay the originally agreed upon settlement amount was not evidence of the insurer's rejection of the repudiation). *But see Tenn. Gas Pipeline Co. v. Lenape Res. Corp.*, 870 S.W.2d 286, 303 (Tex. App.—San Antonio 1993) (holding that the defendant rejected the plaintiff's repudiation of a purchase agreement of gas by continuing to perform under the purchase agreement and provide gas to the plaintiff), *rev'd in part on other grounds*, 925 S.W.2d 565 (Tex. 1996).

Moreover, even after being given opportunities to rescind her repudiation, Plaintiff continued to renounce the Rule 11 Agreement. Plaintiff responded to the Motion to Enforce by filing a Motion to Dismiss the Motion to Enforce, arguing that "[a]ny settlement (if any) was not authorized by me, and therefore should be null and void." Def.'s App. 9. At that time, the Initial Suit already had been dismissed for want of prosecution after Plaintiff failed to appear at the court-scheduled hearing for entry of judgment of the Rule 11 Agreement settlement. *Id.* at 51-52. Moreover, according to her counsel, Plaintiff continued to refuse to sign the Final Settlement Documents to finalize the settlement after her case had been dismissed. *Id.* at 54. And after Plaintiff's last filing in July 2020, *id.* at 62-68, neither party followed up on the Rule 11 Agreement until Plaintiff sent her first demand letter to Original Defendants in July 2023, three years later, *id.* at 101-02. The Court will not hold Original Defendants liable under a settlement agreement that Plaintiff repeatedly and consistently repudiated for over six months and then ignored for three years and that Original Defendants understood and accepted as repudiated. Accordingly, because

Original Defendants are not liable under any agreement or judgment, Plaintiff's breach of contract claim against Defendant, Original Defendants' alleged insurer, fails as a matter of law.

## IV. CONCLUSION

For the foregoing reasons, the Court **GRANTS** Defendant's Motion for Summary Judgment [ECF No. 14]. This case is **DISMISSED WITH PREJUDICE**.

**SO ORDERED.**

SIGNED May 15, 2025.

_____
**KAREN GREN SCHOLER
UNITED STATES DISTRICT JUDGE**

8